# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| LORI GILBERT, as administrator of the Estate of MICHAEL GILBERT, deceased; MARY GILBERT, heir of MICHAEL GILBERT, by and through her mother and natural guardian LORI GILBERT; LORI GILBERT, individually, as heir of MICHAEL GILBERT; ALVIN GILBERT, individually, as heir of MICHAEL GILBERT; MIKE E. GILBERT, individually, as heir of MICHAEL GILBERT; and SEAN GILBERT, individually, as heir of MICHAEL GILBERT,<br><br>           Plaintiffs,<br>vs.<br><br>CEREAL FOOD PROCESSORS, INC., a Kansas corporation; GRAIN CRAFT, INC., a Georgia corporation; THYSSEN KRUPP CO., INC., a Delaware corporation; JOHN DOES 1-20; and BLACK AND WHITE CORPORATIONS 1-20,<br><br>           Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:16-CV-894-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants Cereal Food Processors, Inc. and Grain Craft, Inc.'s Motion to Dismiss for Failure to State a Claim. A hearing on the matter was held on December 15, 2016. At the hearing, Plaintiffs were represented by Randall Edwards and Jeanne Marshall. Defendants were represented by Jeremy Seeley and Blake Biddulph. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and

1

facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Defendant Cereal Food Processors, Inc., operates grain mills in Ogden and Salt Lake City, Utah. In May 2014, Cereal Food Processors was acquired by other companies to create Grain Craft, Inc. Michael Gilbert was an employee of Cereal Food Processors and Grain Craft (collectively, "CFP") for over 20 years. Plaintiffs are relatives of Mr. Gilbert who are administrators of his estate or his heirs, or both.

On August 2, 2014, Mr. Gilbert was working as an employee and under the supervision of CFP at CFP's grain mill in Salt Lake City. On that day, Mr. Gilbert was assigned by Dave Shomer, his supervisor, to move malt product from the second floor to the first floor using a freight elevator, which was not Mr. Gilbert's usual assignment. The freight elevator was installed at CFP's facility in 1923 and was an open elevator that only had a chest-high gate as a barrier to the front of the elevator. The gate had to be closed before the elevator moved. Because the elevator had no sensors to detect the presence of an obstruction or person, the Standard Operating Procedure ("SOP") at CFP was for the second-floor employee to lower the elevator about half way to the first floor so that the first-floor employee was aware of the load. The first-floor employee would then lower the elevator the remainder of the way. CFP did not provide formal training or written materials on the SOP.

Because this was not Mr. Gilbert's usual assignment, Mr. Gilbert was not very familiar with the SOP. After Mr. Gilbert loaded the elevator with malt product, he partially lowered the elevator and stopped it between the floors. Mr. Gilbert then poked his head into the elevator space over the front of the gate to yell down to the first-floor employee that the elevator was

ready. Before Mr. Gilbert could yell down, the first-floor employee engaged the elevator controls and lowered the elevator the rest of the way. Mr. Gilbert's head and upper body were caught between the top of the elevator and the gate, which killed Mr. Gilbert.

The elevator originally included a flexible ceiling that could open upward as a failsafe, but, before the accident, CFP's safety officer, Bob Crandall, directed that the elevator car ceiling be fixed in a closed position by inserting screws through the ceiling and into the car. Before the accident took place, CFP was aware of the unsafe condition of the elevator and of the SOP.

## DISCUSSION

CFP filed a Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6) arguing that the Utah Workers Compensation Act provides an exclusive remedy provision that bars all claims against an employer and its employees for on-the-job accidents, except intentional torts. *See* Utah Code § 34A-2-105(a). Therefore, the issue before the court is whether the Complaint states a plausible claim for an intentional tort.

## STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the court accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citing Fed. R. Civ. P. 12(b)(6)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."). To overcome a Rule 12(b)(6) motion, a plaintiff's complaint

must "state a claim to relief that is plausible on its face" such that the plaintiff has "nudged his claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555.

A court performs this "context specific" task by applying "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court "begin[s] by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Id.* "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## WORKERS' COMPENSATION EXCLUSIVE REMEDY

"The 'primary objective' of workers' compensation is 'to remove industrial negligence, in all its forms, from the concept of the law of tort.'" *Helf v. Chevron U.S.A., Inc.*, 203 P.3d 962, 970 (Utah 2009) ("*Helf I*") (citation omitted). Under the exclusive remedy provision of the Utah Workers' Compensation Act, Utah Code § 34A-2-105(1), "[w]orkers may not sue their employers for injuries caused by on-the-job accidents." *Helf v. Chevron U.S.A., Inc.*, 361 P.3d 63, 69 (Utah 2015) ("*Helf II*"). "A worker, however, may sue an employer for injuries caused by an intentional tort." *Id.*; *see also Bryan v. Utah Int'l*, 533 P.2d 892, 893 (Utah 1975) (recognizing an "intentional injury exception" to the workers' compensation exclusive remedy rule).

The Utah Supreme Court clarified the standard for applying the intentional injury exception in *Helf I* and *Helf II*. In order for the intentional injury exception to apply under Utah law, the plaintiff must demonstrate that the defendant had an "intent to injure," which "requires a specific mental state in which the actor knew or expected that injury would be the consequence of his action." *Helf I*, 203 P.3d at 969. This "intent to injure" standard requires "[m]ore than

knowledge or appreciation of risk"; it requires that the employer knows or expects that "the assigned task will injure the particular employee that undertakes it." *Id.* at 974. "The known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid (ordinary negligence) and become a substantial certainty." *Id.* (citation omitted). This "intent to injure" standard presents a significant hurdle for plaintiffs to clear in order to overcome the exclusive remedy provision in the Utah Workers' Compensation Act.

Despite the significance of this hurdle, the Utah Supreme Court found in *Helf I* that the plaintiff's "complaint alleged facts that could convince a reasonable jury that her injuries were the expected result of" the defendant's actions. *Id.* at 975. In the *Helf* cases, the plaintiff received injuries when her supervisors directed her to neutralize toxic sludge through a chemical reaction in an open-air pit without special respiratory protection or other safety equipment. *Id.* at 965. In finding that plaintiff's complaint was sufficient to meet the intent to injure standard, the Utah Supreme Court relied on the facts that a similar incident had occurred earlier that same day and that the defendant had "knowledge, gained through experience and expertise, of the toxic character of the sludge." *Id.* at 975. Because of these facts, the Utah Supreme Court concluded that the plaintiff's complaint alleged sufficient facts to support the conclusion that the defendant "knew or expected that whoever re-initiated the neutralization process in the open-air pit would be injured by exposure to the toxic gases released by the process." *Id.*

In this case, Plaintiffs have not alleged sufficient facts to clear the significant hurdle created by the "intent to injure" standard. For Plaintiffs to survive this motion, they must allege sufficient facts to plausibly show that CFP knew or expected, with substantial certainty, that Mr. Gilbert would be injured or killed when he was assigned to use the elevator on August 2, 2014. The court concludes that Plaintiffs have failed to meet this burden.

5

The court begins its analysis by identifying the conclusions in the Complaint that are not entitled to the assumption of truth. In this case, the Complaint uses words such as "knew," "intended," and "expected" to describe CFP's intent, but the facts provided by the Plaintiffs do not support those conclusions. *See Hall v. Bellmon*, 935 F.2d 1106, 1113-14 (10th Cir. 1991) (requiring the plaintiff to present facts sufficient to support the conclusions where intentional acts are a requisite element of a claim).

Plaintiffs provide several facts in an attempt to support their conclusions that CFP "knew," "intended," or "expected" Mr. Gilbert to be injured or killed when he used the open elevator in the grain mill. For example, Plaintiffs allege that the SOP was unsafe, that Mr. Gilbert was improperly trained and instructed, that a fail-safe device was modified, that the elevator was unsafe, that CFP and Mr. Shomer were aware of and had discussed the safety issues presented by the elevator, and that CFP and Mr. Shomer withheld this information from Mr. Gilbert. Taken as true, these facts support a conclusion that CFP was aware that "some injury was substantially certain to occur at some time." *Helf I*, 203 P.3d at 974. But the Utah Supreme Court has concluded that this knowledge or appreciation of risk is insufficient to demonstrate the intent to injure required to support an allegation of an intentional tort. Instead, to "demonstrate intent, a plaintiff may show that the actor desired the consequences of his actions, or that the actor believed the consequences were virtually certain to result." *Id.* Based on Plaintiffs' alleged facts, the court concludes Plaintiffs have failed to demonstrate that it is plausible that CFP intended, or was virtually certain, that Mr. Gilbert would be injured or killed when he operated the elevator on the day in question. Although Plaintiffs allegations are sufficient to establish negligence, or possibly even gross negligence, by CFP, they are not sufficient to establish an intent to injure as described by the Utah Supreme Court in the *Helf* cases.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that CFP's Motion to Dismiss for Failure to State a Claim is GRANTED.

DATED this 11th day of January, 2017.

BY THE COURT:

DALE A. KIMBALL
United States District Judge